**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Patricia Frances Marks,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-22-00326-PHX-MTM<br><br>**ORDER** |

Plaintiff challenges the denial of her application for disability insurance benefits under Title II of the Social Security Act ("the Act") by Defendant, the Commissioner of the Social Security Administration ("Commissioner" or "Defendant"). Plaintiff filed a Complaint seeking judicial review of that denial (Doc. 1), and the parties consented to magistrate judge jurisdiction (Docs. 12, 13). Having reviewed Plaintiff's Opening Brief (Doc. 19, Pl. Br.), Defendant's Answering Brief (Doc. 20, Def. Br.), Plaintiff's Reply (Doc. 21, Reply), and the Administrative Record (Doc. 17, AR.), the Court affirms the Commissioner's decision.

**I.     THE SEQUENTIAL EVALUATION PROCESS AND JUDICIAL REVIEW**

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is engaging in substantial, gainful work activity. 20 C.F.R.

§ 404.1520(a)(4)(i). If the claimant is engaged in disqualifying work, she is not disabled. *Id*. If she is not, the analysis proceeds to step two, where the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id*. § 404.1520(a)(4)(ii). If the claimant has no such impairment, she is not disabled. *Id*. If she does, the analysis proceeds to step three, where the ALJ considers whether the claimant's impairment or combination of impairments meets or is medically equivalent to an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id*. § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the ALJ assesses the claimant's residual functional capacity ("RFC"), and proceeds to step four, where he determines whether the claimant is still capable of performing her past relevant work. *Id*. § 404.1520(a)(4)(iv). If the claimant can perform her past relevant work, she is not disabled. *Id*. If she cannot, the analysis proceeds to the fifth and final step, where the ALJ determines if the claimant can perform any other work in the national economy based on her RFC, age, education, and work experience. *Id*. § 404.1520(a)(4)(v). If the claimant cannot, she is disabled. *Id*.

The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (cleaned up). In determining whether substantial evidence supports a decision, the court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (quotations and citations omitted). As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

**II.    PROCEDURAL HISTORY**

Plaintiff filed her claim for Title II disability benefits in July 2018 alleging disability

beginning February 4, 2017. (AR. at 15.) The Commissioner denied Plaintiff's claim at the initial and reconsideration phases of review (AR. at 243-47, 249-53), and Plaintiff timely requested a hearing (AR. at 259-60). Administrative Law Judge ("ALJ") James Delphy conducted a telephonic hearing on May 5, 2020. (AR. at 202-12.) He postponed the hearing due to missing evidence (AR. at 209-211), but he later conducted a supplemental telephonic hearing on January 5, 2021. (AR. at 171-99.) At that hearing, Plaintiff, vocational expert Sonia Peterson, and medical expert Nitin Dhiman, M.D. testified.

On February 25, 2021, ALJ Delphy issued an unfavorable decision. (AR. at 15-35.) He concluded Plaintiff had not engaged in disqualifying work activity, and that she suffered medically-determinable, severe impairments including degenerative disc disease and osteoarthritis of the weight-bearing joints. (AR. at 17-20.) Of note, he concluded Plaintiff's diagnosis of fibromyalgia was not medically determinable under Social Security rules or, alternatively, that it was effectively managed with treatment and was non-severe. (AR. at 18-19.) The ALJ found Plaintiff had no severe impairment which met, or was medically equivalent to, the criteria of any listed impairment. (AR. at 20-21.) He further concluded Plaintiff retained the ability to perform "a range of light work" with various handling, postural, and environmental limitations; a limitation to "work involving simple, routine tasks[]"; and the requirement that Plaintiff be permitted to shift from a seated to standing position to alleviate discomfort while working. (AR. at 21.) In his discussion of RFC, the ALJ found the opinions of the state agency medical consultants and the psychological examiner "partially persuasive." (AR. at 24-25.) He found the opinion of the testifying medical expert, Dr. Dhimon, and the opinion of Plaintiff's treating physician, Dr. V. Paul Kater, to be unpersuasive. (AR. at 25-27.) The ALJ also did not credit Plaintiff's symptom testimony. (AR. at 24.) Based on his RFC and the vocational expert's testimony, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy at step five. (AR. at 27-28.)

### III.   DISCUSSION

Plaintiff raises two issues: (1) whether the ALJ's decision to reject the opinions of

Dr. Dhiman and Dr. Kater was supported by substantial evidence; and (2) whether the ALJ cited clear, convincing reasons supported by substantial evidence for failing to credit Plaintiff's symptom testimony. (Pl. Br. at 4, 10.) For the reasons explained below, the Court affirms the decision of the ALJ.

**A.     The ALJ's Discussion of the Opinion Evidence**

Regulations effective March 27, 2017, provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must determine the persuasiveness of an opinion and articulate his analysis using two primary factors: supportability and consistency. *Id*. § 404.1520c(b)(2). The degree of supportability is based on the extent to which a medical source provides "relevant[ ]objective medical evidence and supporting explanations" to justify a conclusion. *Id*. § 404.1520c(c)(1). For the consistency factor, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id*. § 404.1520c(c)(2). While the ALJ must still consider other factors relevant to the persuasiveness of the opinion, he generally need not articulate how he considered them, outside of limited circumstances. *Id*. § 404.1520c(b)(3), (c)(3)-(5). "For claims subject to the new regulations, the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies. Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).

**1.     Dr. Dhimon**

Dr. Dhimon testified during Plaintiff's January 2021 supplemental hearing that Plaintiff's condition met the criteria of listing 1.04 for spinal disorders based upon an August 2017 lumbar MRI showing significant degenerative change with impingement of

the right L5 nerve root. (AR. at 176-85.)[1] When questioned by the ALJ regarding the listing's criterion that claimant be unable to ambulate, Dr. Dhimon referenced Plaintiff's physical therapy records at Exhibit 12F, noting her therapy goals of gaining strength and mobility in the lower extremities, her diminished gait velocity, and decreased pelvic mobility upon examination. (AR. at 179-80.) Dr. Dhimon noted that this type of degenerative condition worsens with age. (AR. at 181.) In the ALJ's view, however, the record suggested that Plaintiff's medications effectively controlled her symptoms. (AR. at 183.) Having found this, the ALJ asked Dr. Dhimon whether Plaintiff could perform sedentary work. (AR. at 183.) Dr. Dhimon testified he believed Plaintiff could perform sedentary work with frequent breaks (AR. at 183), but cautioned that Plaintiff's pain could be aggravated by simple twitching, twisting, turning, lifting, and bending maneuvers. (AR. at 183.)

The ALJ concluded Dr. Dhimon's testimony was unpersuasive because it was "inconsistent and not supported by the objective medical evidence." (AR. at 25.) The ALJ asserted that Dr. Dhimon "did not have entirely satisfactory responses when questioned about the examination findings and treatments in Exhibit 15F[,]" and Dr. Dhimon's opinion that Plaintiff met listing 1.04 was "not substantiated by the imaging and exam findings, including findings of normal gait and medication effectiveness without side effects . . .[,]" and "lack of demonstrated inability to ambulate or need for [an] ambulatory assistive device." (AR. at 25.) The ALJ reasoned Dr. Dhimon "appeared to concede that [Plaintiff] could do sedentary work[,]" and his conclusion that Plaintiff's condition met listing 1.04 was belied by the examination results in Exhibit 15F. (AR. at 25-26.) Among those records, the ALJ cited mostly benign clinical findings from July 2020, when Plaintiff exhibited no gait abnormalities, full range of motion, full strength, and negative straight-leg raising. (AR. at 26, citing AR. at 835-36.)

---

[1] The Court notes that effective April 2021, the Commissioner revised and renumbered the musculoskeletal listings. *Revised Medical Criteria for Evaluating Musculoskeletal Disorders*, 85 Fed. Reg. 78164-01 (Dec. 3, 2020). Consequently, there currently is no listing 1.04. *Id*. at 78179-81. Listings applicable at the time of Plaintiff's hearing are available in Social Security's Program Operations Management System ("POMS") DI 34121.013, *available at* https://secure.ssa.gov/poms.nsf/lnx/0434121013.

### a. The Parties' Arguments

Plaintiff concedes her condition does not meet listing 1.04 (Pl. Br. at 7), but she argues that Dr. Dhimon's testimony supported a finding of disability in that it supported the conclusion Plaintiff could not perform even sedentary work. (Pl. Br. at 6-7.) The crux of this argument lies in the following exchange between Dr. Dhimon and the ALJ:

> ALJ: If you look at again Exhibit 15F . . . page, 5, . . . the claimant reports her medication significantly improves her pain and quality of life and denied side effects, wouldn't that indicate that with[ ]pain management the person could perform at least sedentary work?
>
> Dr. Dhimon: I believe so, But just know that I think in[ ]the course of an eight-hour day, that, you know, sitting, she's going to have [to] take some frequent breaks due to her pain because –
>
> ALJ: But you – you can –
>
> Dr. Dhimon: -- [INAUDIBLE] no matter – no matter how you look at it, the [ ]degenerative disc disease of her spine that's currently impinging on that right nerve, [ ]the medications are going to, you know, stop the pain for [INAUDIBLE] and just by twitching and twisting and turning or lifting and bending [INAUDIBLE] can easily aggravate the pain very, very quickly, and can escalate.

(AR. at 183.)

Plaintiff argues that Dr. Dhimon's testimony is not consistent with sedentary work, contrary to the ALJ's characterization, and that the record supports Dr. Dhimon's assessment. (Pl. Br. at 7.) Plaintiff contends the ALJ improperly substituted his lay interpretation of the record for Dr. Dhimon's medical interpretation. (Pl. Br. at 7.)

Defendant responds, in part, that the ALJ properly addressed the supportability factor by noting Dr. Dhimon's failure to "provide satisfactory responses" to inquiries regarding the clinical findings in Exhibit 15F. (Def. Br. at 7.) Particularly, Dr. Dhimon acknowledged evidence of Plaintiff's improvement in the record, but improperly speculated about her future instead of opining as to Plaintiff's symptoms during the relevant period. (Def. Br. at 7.) Defendant argues the ALJ did not substitute his lay judgment, but appropriately weighed the evidence, in addressing the consistency of Dr.

Dhimon's opinion with other record evidence, including evidence of unremarkable gait that spanned the relevant period. (Def. Br. at 8.) Defendant also argues the ALJ properly characterized Dr. Dhimon's testimony and accounted for Plaintiff's need for frequent breaks by including a sit-stand option in the RFC. (Def. Br. at 9.)

In her Reply, Plaintiff states, in part, that a sit-stand option is not equivalent to a break from work, and that the ALJ did not properly reject Dr. Dhimon's opinion that Plaintiff would require frequent breaks or the opinion about the functional impact of Plaintiff's pain. (Reply at 3-4.) Plaintiff argues the ALJ cherry-picked unfavorable evidence from the record. (Reply at 5-6.)

### b. Analysis

The ALJ did not err. Even if the ALJ misconstrued Dr. Dhimon's testimony regarding Plaintiff's ability to perform sedentary work, the ALJ still found his opinion unpersuasive as a whole. (AR. at 25.) The ALJ did not find the opinion partially persuasive to the extent it supported Plaintiff's ability to perform sedentary work. (AR. at 25.) Rather, the ALJ found that Plaintiff could perform "a range of light work," (AR. at 21), which exceeds the requirements of sedentary occupations. 20 C.F.R. § 404.1567(a)-(b).

The ALJ's substantive reasons for rejecting Dr. Dhimon's testimony are also corroborated in the record. The ALJ was unconvinced Plaintiff met listing 1.04, and appropriately questioned Dr. Dhimon regarding apparent discrepancies between the listing criteria, the record evidence, and evidence that Plaintiff's treatment managed her symptoms. (AR. at 179-84.) While Dr. Dhimon did explain that physical therapy notes and specific examination findings supported his conclusions, the ALJ was at liberty to reject this explanation if the ALJ's reasoning was supported by substantial evidence. *Woods*, 32 F.4th at 787. This is not the improper substitution of the ALJ's lay opinion. It is the ALJ's province to consider the opinion evidence and determine whether it is supported and consistent with the record. *See* 20 C.F.R. § 404.1520c (the ALJ must consider all opinion evidence using the enumerated factors). The ALJ cited pain management records showing Plaintiff exhibited normal strength; no limp, unsteadiness, or gait ataxia; no need for an

assistive device; negative straight leg raising examinations; and normal sensation. (AR. at 26, citing 790, 795-96, 801-02, 806-08, 812-13, 817-18, 823-24, 829-30, 834-36.) The objective evidence, the ALJ believed, supported his RFC for "a range of light work with a sit/stand option and other appropriate nonexertional limitations[,]" rather than sedentary work with frequent breaks, as Dr. Dhimon opined. (AR. at 25-26.) Based on these findings, the ALJ deemed Dr. Dhimon's opinion unpersuasive and concluded Plaintiff could perform a range of light work. Substantial evidence supports the ALJ's rationale, and the ALJ did not err.

### 2. Dr. Kater

In an assessment from January 2019, Plaintiff's treating family physician, V. Paul Kater, M.D. completed a "Medical Source Statement of Ability to do Work-Related Activities (Physical)[.]" (AR. at 744-49.) Dr. Kater concluded, in part, that Plaintiff could only sit or stand for one-to-two hours total, and walk for only one hour, in an eight-hour workday. (AR. at 745.) He provided a narrative summary accompanying his assessment wherein he explained Plaintiff's "inability to do any repetitive motions or prolonged sitting or standing without resting or lying down for a considerable amount of time." (AR. at 751.)

The ALJ concluded Dr. Kater's opinion was unpersuasive as it was "over-restrictive and not supported by the objective medical evidence[,]" including the aforementioned examination findings in Exhibit 15F. (AR. at 26.)[2] The ALJ opined Dr. Kater relied more upon Plaintiff's subjective report than actual objective findings (AR. at 26-27), and he concluded Plaintiff's reported inability to perform daily activities was inconsistent with these relatively benign findings. (AR. at 27.) The ALJ noted Plaintiff was able to maintain personal care, drive, and care for her 11-year-old. (AR. at 27.)

#### a. The Parties' Arguments

Plaintiff argues the ALJ improperly assumed Dr. Kater's opinion was predicated on Plaintiff's self-report. Plaintiff states, however, that Dr. Kater's assessment does not

---

[2] In his discussion of Dr. Kater, the ALJ jointly addressed another assessment completed by Plaintiff's physical therapist (AR. at 26-27), but Plaintiff does not challenge the ALJ's findings regarding that opinion (Pl. Br. at 4-10).

support this conclusion, as he substantiated his assessment with his own observations and was familiar with Plaintiff's course of treatment. (Pl. Br. at 9.) Plaintiff notes Dr. Kater "did not assume the neurological manifestations that the ALJ pronounces as absent[,]" but predicated his findings on Plaintiff's fibromyalgia. (Pl. Br. at 9.) Plaintiff asserts that the etiology of her limitations is a secondary concern; that the Act only requires Plaintiff prove the existence of a medically-determinable impairment, which she has; and that the ALJ never rejected Dr. Kater's opinion because he attributed her symptoms to fibromyalgia. (Pl. Br. at 9.) Plaintiff also argues the ALJ improperly relied upon evidence of normal clinical examinations from a later period, and did not address evidence from an earlier period, which is legal error. (Pl. Br. at 8.)

Defendant argues the ALJ was correct to note that Dr. Kater relied upon Plaintiff's subjective report, as Dr. Kater's report contained "multiple references to Plaintiff's own assessment rather than to objective findings[.]" (Def. Br. at 9, citations omitted). Defendant argues the ALJ properly cited examination findings which did not support the limitations Dr. Kater assigned, and he appropriately relied upon negative neurological signs, which can be used to determine whether Plaintiff's complaints of pain are legitimate. (Def. Br. at 10.) Finally, Defendant argues the ALJ appropriately relied upon more recent examination findings as an illustration that Plaintiff's condition is not disabling because it is manageable with treatment. (Def. Br. at 11.)

Plaintiff replies, in part, that the "recordation of subjective perceptions" does not support that Dr. Kater failed to make an objective assessment, and states that the ALJ must look to the entire record to assess whether Dr. Kater's opinion is consistent. (Reply at 6.)

**b. Analysis**

The Court finds the ALJ did not err with respect to Dr. Kater. Plaintiff argues that the pain management records at Exhibit 15F "do not lend the inference that earlier records were wrong especially where, as here, significant treatment took place in the interim." (Pl. Br. at 8-9.) Plaintiff continues, "[d]ifferent periods of time with different facts require a separate analysis." (Pl. Br. at 9.)

In *Smith v. Kijakazi*, which Plaintiff cites in support, the Ninth Circuit held that the ALJ erred by "not sufficiently consider[ing] the duration of, or chronological fluctuation in, [the claimant's] symptoms." 14 F.4th 1108, 1112 (9th Cir. 2021). There, the claimant suffered from mental health symptoms "triggered by an acute grief reaction" stemming from the deaths of family members. *Id*. at 1110. The Ninth Circuit noted that the claimant's "symptoms varied, and generally improved, during the years following his onset date[.]" *Id*. at 1112. The court observed, "over time, [the claimant] moved from a state where he appears to have been unable to engage in meaningful work to a state in which he was significantly less hindered." *Id*. at 1114. But, the ALJ's questioning of the claimant and medical expert in *Smith* mostly pertained to the claimant's current functioning and symptomology and more recent medical evidence. *See Smith*, 14 F.4th at 1112-13. Consequently, the court held that the ALJ's analysis of the claimant's symptom testimony was insufficient for that earlier period. *Id*. at 1112-14.

The Court finds *Smith* distinguishable. Here, Plaintiff does not make a sufficient case that there was a significant change in her overall condition. (Pl. Br. at 8-9.) At best, she implies (without citing record evidence), that the ALJ's citations to the record are unrepresentative of her earlier condition, and thus, insufficient to reject Dr. Kater's report. (Pl. Br. at 8.) Plaintiff's analysis, however, stops short: she does not adequately explain why the evidence from this earlier period warrants a different result.

The Court accepts that some conditions can wax and wane over time, and that the ALJ's conclusions must be supported by substantial evidence for the entire relevant period. *See Smith*, 14 F.4th 1108 at 1113 ("[T]o reject the specific portions of the claimant's testimony that the ALJ has found not to be credible, we require that the ALJ provide clear and convincing reasons relevant to that portion.") (citations omitted); *Attmore v. Colvin*, 827 F.3d 872, 877-79 (9th Cir. 2016) (ALJ's citations in support of improvement must be evidence of broader development in condition, as opposed to a temporary state, and the ALJ must examine evidence of improvement in the "broader context of [the claimant's] impairment."). But, Plaintiff has not sufficiently argued, and the record has not shown, why

the ALJ's citation to normal clinical examination findings at Exhibit 15F is not consistent with earlier records or Plaintiff's earlier functioning. While Plaintiff argues that Dr. Kater's limitations were based upon her fibromyalgia—rather than an impairment that would be expected to result in neurologic deficits such as those the ALJ cited—Defendant argues, and the Court agrees, that the ALJ concluded fibromyalgia was not medically-determinable, and Plaintiff does not challenge that conclusion. (Def. Br. at 10 n. 6, citing AR. at 18-19.)[3] On this record, the Court finds the ALJ cited substantial evidence supporting his conclusion that Dr. Kater's opinion was not consistent with the record. 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."); *Woods*, 32 F.4th at 792. ("The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings.") (cleaned up).[4]

**B.     Plaintiff's Symptom Testimony**

To evaluate a claimant's symptom testimony, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (internal citations and quotations omitted). From there, if there is no evidence of malingering, the ALJ must cite "specific, clear and convincing reasons" for failing to credit the testimony. *Id*. at 1014-15.

After summarizing Plaintiff's testimony and the record, the ALJ concluded Plaintiff's statements were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained . . . ." (AR. at 24.) The ALJ first noted

---

[3] The ALJ alternatively concluded this impairment was non-severe, but that it was sufficiently accounted for in her RFC. (AR. at 19-20.) Plaintiff does not argue the RFC fails to account for her fibromyalgia.

[4] The Court need not address the other reasons the ALJ cited for rejecting Dr. Kater's opinion.

Plaintiff's statements "are not fully substantiated because the objective medical evidence indicates [her] symptoms improved and stabilized with treatment . . . ." (AR. at 24.) The ALJ noted the lack of mental health treatment and the psychological examiner's unremarkable findings. (AR. at 24.) The ALJ further noted Plaintiff's reported 80% improvement in her thumb pain after an injection. (AR. at 24.) The ALJ reasoned that Plaintiff's report of symptoms to her physical therapist was inconsistent with subsequent examination findings; that Plaintiff does not use an assistive device to walk; that she has not undergone surgery; and that she has exhibited negative straight leg raising during examinations. (AR. at 24.) The ALJ concluded the objective findings are inconsistent with Plaintiff's reported "near inability to perform daily activities . . . ." (AR. at 24.) The ALJ also noted Plaintiff can maintain personal care, drive, and provide care for her 11-year-old. (AR. at 24.)

### 1. The Parties' Arguments

Plaintiff argues that the ALJ merely concluded the testimony was "not fully substantiated by the objective record . . . [which] is not the proper legal test." (Pl. Br. at 11.) Plaintiff notes that under *Burch v. Barnhart* and other cases, "the objective record is not an independent basis for rejecting testimony." (Pl. Br. at 11, citing 400 F.3d 676, 680 (9th Cir. 2005)). Plaintiff asserts her testimony should be credited as true and that remand for payment of benefits is warranted. (Pl. Br. at 12.)

Defendant responds that the ALJ cited several clear, convincing reasons, including Plaintiff's reported improvement and her daily activities. (Def. Br. at 14.) Defendant argues that the record supports the conclusion Plaintiff's pain improved with certain procedures, such as nerve blocks, and Plaintiff repeatedly described improvement and stability in her symptoms to her pain management provider. (Def. Br. at 13.) Defendant also argues that Plaintiff's reported inability to perform daily activities was inconsistent with her ability to care for her daughter, drive, and maintain personal care. (Def. Br. at 14.)

Plaintiff replies that the evidence the Commissioner cites belies the conclusion Plaintiff improved. (Reply at 6-7.) She argues that the ALJ does not explain how the cited

daily activities "translate[] into any kind of productive activity in a work or work-like setting[,]" and that she never testified to "a near inability to perform daily activities." (Reply at 8.) Plaintiff asserts her description of symptoms and limitations is consistent with the medical and opinion evidence. (Reply at 8.)

### 2. Analysis

The ALJ cited clear, convincing reasons for rejecting Plaintiff's symptom testimony. Plaintiff's statements in the record reflect her medication managed the pain and increased her functioning and quality of life. (AR. at 797, 803, 814-15, 819, 821, 825, 827, 831-32, 836.) The ALJ's conclusion is supported (AR. at 24), and an ALJ may fail to credit symptom testimony where the record reflects the impairments are managed with treatment. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."); *Guthrie v. Kijakazi*, No. 21-36023, 2022 WL 15761380, at *1 (9th Cir. Oct. 28, 2022) (unpublished) (citing *Warre*); *Smith v. Kijakazi*, No. 21-35625, 2022 WL 3714345, at *2 (9th Cir. Aug. 29, 2022) (unpublished) (citing *Warre*).

There is also ample support for the ALJ's conclusion that the benign clinical findings—negative straight-leg raising, full strength in the extremities, and no gait unsteadiness, ataxia, or limp—did not corroborate the claimant's symptom testimony. (AR. at 790, 795-96, 801-02, 807-08, 812-13, 829-30, 834-35.) "[A]n ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain[,]" *Burch*, 400 F.3d at 680 (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir.1991)), but "the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)). Such is the case here.

\\\
\\\

The ALJ cited clear, convincing reasons supported by substantial evidence for rejecting Plaintiff's symptom testimony.[5]

**IT IS ORDERED** that the February 25, 2021 decision of the ALJ is **affirmed**.

**IT IS FURTHER ORDERED** directing the Clerk to enter judgment accordingly and terminate this action.

Dated this 19th day of September, 2023.

Honorable Michael T. Morrissey
United States Magistrate Judge

---

[5] This Court need not address Plaintiff's reported daily activities or the other reasons cited by the ALJ to discredit Plaintiff.